```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


JOSEPH EVANS,                      )
                                   )
            Plaintiff,             )
                                   )
      v.                           )    No. 4:06 CV 50 DDN
                                   )
HUSSMANN CORPORATION,              )
                                   )
            Defendant.             )
```

**MEMORANDUM**

This matter is before the court on the motion of defendant Hussmann Corporation for summary judgment. (Doc. 31.) The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing was held March 28, 2007.

**I. Pleadings**

Plaintiff Joseph Evans brought this action against defendant Hussmann Corporation for employment discrimination pursuant to Title VII of the Civil Rights Act. (Doc. 3.) In his complaint, plaintiff alleges that his employment at Hussmann was terminated because he is black and because of his sex.[1] He alleges that Dennis Gamache, Jr., a white coworker, made comments about black males to him, that he performed his job well, and that management created unnecessary problems. He requests that his employment be reinstated and that he be compensated.

In its answer, defendant generally denies the allegations and lists 25 affirmative defenses. Defendant has now moved for summary judgment. It argues that plaintiff has no evidence establishing a prima facie case of either race or sex discrimination, and that he has no evidence that the reason defendant cited for terminating him was pretextual. Further, it argues that plaintiff has failed to join his labor union as an indispensable party.

---

[1]At the hearing held March 28, 2007, plaintiff stated that he was not pursuing the sex discrimination claim.

Plaintiff argues that summary judgment should not be granted, because he has evidence establishing a prima facie claim of discrimination. He also argues that defendant's reasons for terminating his employment are a pretext for discrimination. He further argues that he is not seeking reinstatement, so the union is not a necessary party.

## II. Summary Judgment Standard

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Union Elec. Co. v. Southwestern Bell Tel. L.P., 378 F.3d 781, 785 (8th Cir. 2004). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Union Elec. Co., 378 F.3d at 785. A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if there is substantial evidence to support a verdict in favor of the non-moving party. Die-Cutting Diversified, Inc. v. United National Ins. Co., 353 F. Supp. 2d 1053, 1055 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence of specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir.), cert. denied, 543 U.S. 956 (2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

## III. Undisputed Facts

Defendant Hussmann is a manufacturer of refrigeration equipment, and plaintiff Joseph Evans worked at its location in Bridgeton, Missouri. At this location, Hussmann employs 1,500 hourly employees, the majority of whom are male. About half of them are African American. (Doc. 33 at 1-2.)

Plaintiff Joseph Evans, an African American, began working at Hussmann in 1992. While he was employed there, he was a member of the bargaining unit at the facility represented by Steelworkers Local Union No. 9014. Plaintiff worked a variety of jobs while employed at Hussmann, and his employment was ultimately terminated in August 2005. (Doc. 33 at 2.)

In November 1995, plaintiff received a disciplinary write-up for threatening, intimidating, and interfering with other employees, including shaking his hands at another worker and telling him he was going to "kick [his] ass." In December 1995, plaintiff was written up for refusing a direct order from a supervisor. In July 1996, plaintiff was given a "fair and final" warning for using abusive language, agitating a fight, and interfering with an employee. Plaintiff remained employed. (Doc. 33 Exs. P, Q, R.)[2]

In August 2000, plaintiff was written up for arguing with a co-worker, making threatening gestures, and distracting other employees. In February 2003, plaintiff was given a different work assignment but would not do the work assigned and had an altercation with the supervisor. He was given another "fair and final" warning. In July 2004, plaintiff was observed angrily yelling at a co-worker and calling her "white trash" which resulted in another "fair and final" warning. (Doc. 33 Exs. O, N, J.)[3]

After plaintiff was observed calling the other employee names, Jenna Mertz conducted an investigation, and referred plaintiff to the Employee Assistance Program counseling (E.A.P.). Over the course of his employment, plaintiff was sent to E.A.P. counseling four times, including for marijuana use, and other issues at work. One time, he made threatening remarks to the counselor. He threatened a

---

[2]Plaintiff denies that the events described in Exhibits P (threatening employees), Q (refused a direct order), and R (agitating a fight) ever happened, and contends that "management was out to get him in 1996." (Doc. 36 at 12.)

[3]Plaintiff denies the events in Exhibits N (that he argued with a supervisor over a work assignment) and O (arguing with a co-worker) ever took place. (Doc. 36 at 11.)

psychiatrist, did not take his medication, and threatened the security staff at the building. (Doc. 33 at 3-4; Ex. J, Ex. K.) [4]

In the months immediately prior to plaintiff's termination, Human Resources Manager Bill Hinch, a black male, observed plaintiff being disrespectful to employees, including supervisors. This conduct included name calling, interrupting, raising his voice, gesturing and turning his back while another was talking. No formal discipline was taken for these incidents. Hinch spoke to plaintiff privately about his conduct to give him an opportunity to correct his behavior and keep his job. (Doc. 33, Hinch Dep. 15-16.)

At the time he was terminated, plaintiff worked on an assembly line where he was to place colored trim on the sides of refrigeration equipment, requiring him to read a written ticket to determine what color trim to affix to the equipment. Plaintiff did not affix the right color trim to the correct unit on a number of different occasions. Hinch was notified of the problem a week before plaintiff's termination. Gamache, a white male and the lead person on plaintiff's line, discussed the problem with plaintiff, and on August 11, 2005, plaintiff again put the wrong trim on the units. Gamache, admittedly angry at plaintiff, asked him if he could read the ticket. Plaintiff called Gamache a "bigot." Gamache and plaintiff had had no previous problems working together. (Doc. 33, Pl. Dep. 44-48, Gamache Dep. 6-8; Hinch Dep. 54.)

After the confrontation, Gamache walked away from plaintiff to get his supervisor, Brian Groninger. Groninger arrived at the scene with a union representative. Plaintiff was agitated and demanded that Bill Hinch be contacted. Hinch, chief union steward Don Gant, and payroll supervisor Kim Miller met with plaintiff. Hinch interviewed others present about the incident. During the meeting, plaintiff was agitated and would not sit down and be quiet. Gamache was given a verbal warning on how to address employees. Plaintiff was thereafter terminated. Hinch made the decision to terminate him. (Doc. 36 at 9; Doc. 33, Gamache Dep. at 12; Hinch Dep. at 35, 52, 67.)

---

[4]Plaintiff denies that the events detailed in Exhibit K, that he became upset with security and that a doctor felt he was a threat to the company, ever happened. (Doc. 36 at 11.)

Following his termination, plaintiff filed a grievance with the Steelworkers Union. He did not mention discrimination in the grievance. The union declined to pursue the grievance. Plaintiff met personally with Larry Parsons, but did not allege that he was discriminated against based on race or sex. (Doc. 33, Parson Dep. 5-9.)

## IV. Discussion

To survive summary judgment in a Title VII discrimination case, plaintiff must establish a prima facie case of discrimination based on race. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). "To establish a prima facie case of . . . discrimination, [plaintiff] must show: (1) [he] is a member of a protected class, (2) [he] was meeting his employer's legitimate job expectations, (3) [he] suffered an adverse employment action, and (4) 'similarly situated employees outside the protected class were treated differently.'" Shanklin v. Fitzgerald, 397 F.3d 596, 602 (8th Cir.), cert. denied, 126 S. Ct. 807 (2005) (quoting Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004)) (race discrimination); Tenge v. Phillips Modern Ag Co., 446 F.3d 903, 910 (8th Cir. 2006) (sex discrimination).

If plaintiff establishes a prima facie case, the burden shifts to defendant to produce evidence of "a legitimate, non-discriminatory reason for the adverse employment action." Tolen, 377 F.3d at 882. If defendant articulates a legitimate, non-discriminatory reason for plaintiff's termination, the presumption of discrimination disappears and the burden shifts back to plaintiff to show that this reason is merely a pretext for discrimination. Mayer v. Nextel West Corp., 318 F.3d 803, 807 (8th Cir. 2003); Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1106 (8th Cir. 1998).

**A. Prima Facie Case**

Defendant argues that plaintiff cannot provide any evidence that supports elements two and four of the prima facie test: that he was meeting the legitimate job expectations of his employer, and that other

similarly situated employees outside his protected class were treated differently.[5]

Plaintiff argues that in the 13 years he worked at Hussmann, he was never written up for deficiencies in his work. He maintains that all the disciplinary reports defendant submitted (Exs. B, N, O, P, Q, and R) were made by white employees, that he was never aware of these reports and never signed them, and denies that their content ever occurred. He denies calling a white female employee "white trash" and denies ever being told he had an anger management problem. He maintains that Gamache and Groninger never saw plaintiff be disrespectful to others. He maintains that the disciplinary reports were fabricated because he is being "set up."

Plaintiff must provide evidence that he is meeting the legitimate expectations of his employer. "The standard for assessing performance 'is not that of the ideal employee, but rather what the employer could legitimately expect.'" Calder v. TCI Cablevision of Missouri, Inc., 298 F.3d 723, 729 (8th Cir. 2002) (quoting Keathley v. Ameritech Corp., 187 F.3d 915, 920 (8th Cir. 1999)). An employee may meet some expectations, but that does not mean that he meets all legitimate expectations if significant ones are not met. Calder, 298 F.3d at 729.

Considering these facts in the light most favorable to plaintiff, and affording him all inferences, the court concludes as a matter of law that there is not sufficient evidence supporting plaintiff's contention that he was meeting his employer's legitimate expectations, and there is overwhelming evidence that he was not meeting them.

Here, there is documented evidence that plaintiff had many disciplinary violations while working at Hussmann. While plaintiff contends he performed his line duties satisfactorily, this does not end the inquiry. Overwhelming documented evidence shows that plaintiff often threatened coworkers, was rude to them, was rude and insubordinate to supervisors, agitated fights, and threatened to fight other employees, among other things. Hussmann sent defendant to counseling

---

[5]Both parties agree that plaintiff was a member of a protected class as an African American man, and that he suffered adverse employment action, because he was terminated.

for his behavior, which it believed was an anger management problem. His doctor believed he was a threat to the company. All of his disciplinary write-ups, including insubordination, abusive and offensive language, and distracting other employees, were grounds for termination according to the procedural guidelines in place at Hussmann. (Doc. 37 Ex. C.)

Further, there is evidence that plaintiff was not performing his job duties on the line satisfactorily when he was terminated. He repeatedly attached the wrong labels to refrigeration units. Gamache discussed these work problems with plaintiff prior to their argument leading to his termination.

Plaintiff argues that Hinch and Gamache testified that neither of them ever recalled seeing defendant be disrespectful prior to that day. Even if true, other employees and supervisors did see plaintiff be disrespectful, insubordinate and violate Hussmann policy. Plaintiff had a long history of violations. Further, Hinch testified that he did recall seeing plaintiff be disrespectful to others. (Doc. 33, Hinch Dep. at 15-16.)

Plaintiff asserts in conclusory fashion that the disciplinary reports are all untrue, and that he was being "set up," but provides no evidence supporting this contention. "[A] party litigant may not generate a question of material fact out of uncontradicted evidence merely by speculating that a witness is lying." Otey v. Marshall, 121 F.3d 1150, 1151 n.1 (8th Cir. 1997); F.D.I.C. v. Bell, 106 F.3d 258, 265 n.9 (8th Cir. 1997) (case will not proceed to trial based on chance that jury will disregard evidence and accept unsupported speculation of litigant). Absent evidence supporting plaintiff's speculations, there is no question of material fact that he was meeting his employer's legitimate expectations.

Further, plaintiff has provided the court with no evidence that similarly situated employees were treated differently. The Eighth Circuit has applied two different standards to this issue. "To be similarly situated, the comparable employees 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing

circumstances.'" Tolen, 377 F.3d at 882 (quoting Gilmore v. AT & T, 319 F.3d 1042, 1046 (8th Cir. 2003)); but see Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 852 (8th Cir. 2005) (using a less onerous standard that plaintiff must show she and other employees were involved in the same or similar conduct, but were disciplined differently).[6]

Here, under either standard, plaintiff has not provided evidence that other similarly situated employees were treated differently. Plaintiff argues that the incident he was fired for is evidence that similarly situated employees were treated differently; he was fired for the fight with Gamache, while Gamache was not fired. Plaintiff has not provided the court with any evidence that Gamache was a similarly situated employee. The conduct of the two cannot be categorized as similar. Gamache was plaintiff's superior. Gamache may have been rude by inquiring whether plaintiff could read, but plaintiff was insubordinate by calling him a "bigot" and getting involved in an altercation with him. Further, plaintiff kept arguing and refused to calm down, while Gamache removed himself from the fight and did not continue to argue with superiors.

Further, plaintiff had a long history of disciplinary actions. Plaintiff has not provided the court with evidence that Gamache's history was as loaded with disciplinary reports as his. Plaintiff argues that there is no evidence in the record of Gamache's disciplinary record. However, the burden remains on plaintiff at all times to prove the elements of a prima facie case. "The plaintiff retains at all times the ultimate burden of proving that the adverse employment action was motivated by intentional discrimination." Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1021 (8th Cir. 1998). Therefore, the burden is on plaintiff to produce evidence that Gamache had a work history similar to his. Plaintiff has not done so. Further, Gamache was disciplined

---

[6]The Rodgers court noted that there is a "conflicting line of cases in our Circuit regarding the standard for determining whether employees are similarly situated at the prima facie stage of the McDonnell Douglas burden-shifting framework." Rodgers, 417 F.3d at 851. In Rodgers, the court found that two employees were similarly situated when they both processed transactions for their own bank accounts, and one was terminated and the other received no punishment. Id. at 852.

for the altercation.  He was warned and counseled on how to more appropriately respond to employees.

Plaintiff had several "final warnings" in his file.  He was given repeated chances to improve his behavior, and finally was terminated for the very reasons for which he was previously written up -- rude, disruptive behavior.  There is no evidence he was treated differently from similarly situated employees.

Plaintiff has not provided evidence supporting a prima facie case for discrimination.

**B.  Legitimate, Nondiscriminatory Reason--Pretext**

Defendant also argues that, even if plaintiff has met his burden of establishing a prima facie case, it has provided the court with a legitimate, nondiscriminatory reason for plaintiff's termination.

Defendant argues that it fired plaintiff because of his rude, insubordinate and disrespectful behavior.  Plaintiff can prove indirectly that the reason cited for his termination was pretextual for a discriminatory reason by "showing that the employer's proffered explanation is unworthy of credence."  Goetz v. Farm Credit Services, 927 F.2d 398, 400 (8th Cir. 1991).

Here, even if plaintiff succeeded in proving a prima facie case, which he did not, plaintiff has provided no evidence that his behavior was not disruptive or disrespectful.  Plaintiff argues that all of the reports of his bad behavior were made by white people, and sometimes white females.  However, he was ultimately fired by another African American man, Bill Hinch, who observed him behave badly.

Besides plaintiff's conclusory statements that the disciplinary reports were fabricated, there is no evidence that the reasons cited by defendant for plaintiff's termination are merely a pretext for discrimination.  As stated above, mere unsupported conclusory speculations are not sufficient to overcome summary judgment.  F.D.I.C., 106 F.3d at 265 n.9.

For the above reasons, the motion of defendant for summary judgment is granted.[7] An order in accordance with this memorandum is filed herewith.

/S/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 19, 2007.

---

[7]It is unnecessary for the court to consider defendant's argument that plaintiff failed to sue an indispensable party, his union.